UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CATO SALES AND TRADING,<br><br>    Plaintiff,<br><br>v.<br><br>COSMO SPECIALTY FIBERS, INC.,<br><br>    Defendant. | CASE NO. C14-5549 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Cato Sales and Trading's ("Cato") motion for partial summary judgment (Dkt. 15) and Defendant Cosmo Specialty Fibers, Inc.'s ("Cosmo") cross motion for partial summary judgment (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part Cato's motion and grants Cosmo's motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On July 9, 2014, Cato filed a complaint against Cosmo alleging breach of contract, breach of the covenant of good faith and fair dealing, and a violation of the Washington sales representative contract agreement statute, RCW 49.48.160. Dkt. 1.

ORDER - 1

On March 19, 2015, Cato filed a motion for summary judgment. Dkt. 15. On April 6, 2015, Cosmo responded and filed a cross motion for summary judgment. Dkt. 19. On April 10, 2015, Cato replied. Dkt. 27. On April 27, Cato responded to Cosmo's motion. Dkt. 24. On May 1, 2015, Cosmo replied (Dkt. 27), and on May 4, 2015, Cosmo filed a corrected version of the reply (Dkt. 28). On May 6, 2015, Cato filed a surreply requesting that the Court strike new arguments Cosmo included in its reply brief. Dkt. 29.[1]

## II. FACTUAL BACKGROUND

Cato's parent company Charlestown Investments ("Charlestown") identified a business opportunity to acquire and restart the former Weyerhaeuser dissolving wood pulp mill in Cosmopolis, Washington. Charlestown met with the Gores Group, a Los Angeles private equity group ("Gores"), and presented its plan to acquire the mill. In September of 2010 Gores formed Cosmo to purchase and run the mill, and Charlestown formed Cato to serve as the mill's global sales agent.

On September 16, 2010, Cato and Cosmo entered into an agreement wherein Cosmo was the "Company" and Cato was the "Agent." Dkt. 18, Exh. A ("Agency Agreement"). The relevant provisions of the Agency Agreement are set forth in the discussion section, but the parties essentially agreed that Cato would be the exclusive agent to pursue and obtain sales of Cosmo's products.

---

[1] For the reasons set forth below, the Court denies the motion to strike because the majority of both parties' arguments are irrelevant to the sole issue presented in Cosmo's motion.

It is undisputed that one of the most valuable products Cosmo endeavored to produce was high-value acetate, which is the material used to make cigarette filters. *Id.*, Exh. E. In order to sell its acetate for cigarette filters, however, the mill must be qualified by the cigarette manufacturer. *Id.* The mill obtains this qualification by making samples of acetate pulp that are sent to specialty chemical companies who supply product to the cigarette manufacturers. *Id.* The specialty chemical companies turn the acetate pulp into acetate filter tow for the cigarette manufacturer to make into cigarette filters. *Id.* The cigarette manufacturer then conducts a "taste test" of the filters made from the mill's sample.

In July 2011, Cosmo generated acetate samples for submission to two specialty chemical companies, Daicel Chemical Industries Ltd. ("Daicel") and Eastman Chemical Company ("Eastman) who supply filter tow to cigarette manufacturers Philip Morris International Inc. ("Philip Morris"), Japan Tobacco International ("JT"), and British American Tobacco Company ("BAT"). Although the Cosmo tow passed JT and BAT's taste tests, the tow ultimately failed Phillip Morris's taste test. On November 19, 2012, Daicel advised Cato that the taste failure would preclude sales for 2013. *Id.*, Exh. G.

In a letter dated May 21, 2013, Cosmo sent Cato a notice that purported to terminate Cato's position as the Cosmopolis mill's global sales agent effective June 3, 2013. *Id.*, Exh. I. In letters dated the following day, Cosmo sent Cato's customers notice of the termination and its replacement with Central National-Gottesman, Inc. ("CNG"). *See, e.g.*, *Id.*, Ex. J. On June 3, Cosmo issued a press release announcing that Cosmo's new sales agent would be CNG.

# III. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Cato's motion**

Cato moves for partial summary judgment on the issues of whether Cosmo breached the Agency Agreement by (1) failing to give Cato 60 days' notice before terminating the Agency Agreement, (2) engaging a different sales agent before the 60 days' notice expired, and (3) failing to provide product samples that would allow Cato to sell the Cosmopolis mill's output. Dkt. 15 at 6. With regard to the first two issues, Cosmo "agrees that its engagement of CNG before the end of the 60-day termination period breached the exclusivity clause of section 2.1 and that Cosmo was in breach of that clause for a period of 47 days." Dkt. 19 at 18. Cosmo, however, argues that, because Cato requests a determination of "liability," Cato must show both breach and damages. *Id*. This argument relies on a failed reading of the motion because Cato explicitly "reserve[d] for trial or a subsequent motion for summary judgment the issues of whether Cosmo breached further provisions of the Agency Agreement or other duties and the extent of damages caused by these breaches." Dkt. 15 at 2 n.2. Therefore, based on Cosmo's concessions, the Court grants Cato's motion for summary judgment on the

1  issues of whether Cosmo failed to give adequate notice and improperly engaged another
2  sales agent before the Agency Agreement expired.
3        With regard to the third issue, the parties dispute whether the Agency Agreement
4  required Cosmo to provide adequate samples.  On this issue, the agreement provides as
5  follows: "The Company shall provide the Agent with all necessary Product samples,
6  printed marketing materials and related information to enable the Agent to sell the
7  Product."  Agency Agreement, ¶ 6.  Cato argues that this provision obligated Cosmo to
8  provide samples that would allow sales, whereas Cosmo asserts that Cato's reading of the
9  contract is at least a matter of interpretation as to what enabling the Agent to sell product
10 means, and at most completely without merit.  The Court agrees with Cosmo because
11 even if one could consider Cato's reading reasonable, a question of fact exists as to
12 interpretation.  *Martinez v. Miller Indus., Inc.*, 94 Wn.App. 935, 943 (1999) (determining
13 a contractual term's meaning involves a question of fact).  Therefore, the Court denies
14 Cato's motion on this issue.[2]

15 **C.  Cosmo's motion**

16       Cosmo moves for summary judgment on the issue of whether it is "liable to pay
17 Cato a commission, under the Agency Agreement or the implied duty of good faith and
18 fair dealing, if a customer decides not to buy Cosmo Product."  Dkt. 19 at 2.  On this
19 simple question, the parties are two ships passing in the night.  While Cato writes

---

[2] Cato also argues that Cosmo violated Washington's perfect tender rule.  Dkt. 22 at 6.  The argument, however, was raised for the first time in reply, which is improper.  Moreover, Cato fails to identify an unambiguous requirement for Cosmo's exact performance.

extensively on the subjects of the parties' mutually agreed business strategies and Cosmo's alleged duty to produce saleable acetate product, Cato fails to address the simple issue set forth by Cosmo whether a commission is due if a customer says "No." In other words, Cato fails to identify a provision in the Agency Agreement that states that a commission is due independent of any sale. To the contrary, the agreement provides, in relevant part, as follows:

> In consideration of the Services rendered by the Agent under this Agreement, the Agent shall be paid a commission of three percent (3%) on the Net Receipts on account of Agent Orders during the Term (the "Commission"), such Commission to be paid to the Agent in accordance with Clause 7.4 below.

Agreement, ¶ 7.1.[3] This is unambiguous language with only one reasonable interpretation, which is that Cosmo shall pay Cato a commission on the net receipts of orders. Therefore, the Court grants Cosmo's motion for summary judgment on the discrete issue set forth in Cosmo's motion. *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 9 (1997), *as amended on denial of reconsideration* (Aug. 8, 1997) ("summary judgment is proper if the parties' written contract . . . has only one reasonable meaning."). This ruling, however, does not resolve whether Cosmo may be liable for some other damages for a breach of some other provision of the contract.

---

[3] Paragraph 7.4 provides for the timing of any payment and is not relevant to the analysis.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Cato's motion (Dkt. 15) is **GRANTED in part** and **DENIED in part** and Cosmo's motion is **GRANTED**.

Dated this 28th day of May, 2015.

_____
BENJAMIN H. SETTLE
United States District Judge