1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

CATO SALES AND TRADING,

8                        Plaintiff,

CASE NO. C14-5549 BHS

9   v.

10  COSMO SPECIALTY FIBERS, INC.,

11                       Defendant.

ORDER DENYING
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT AND MOTION FOR
SUMMARY JUDGMENT

12

13        This matter comes before the Court on Defendant Cosmo Specialty Fibers, Inc.'s

14  ("Cosmo") motions for partial summary judgment (Dkt. 41) and summary judgment

15  (Dkt. 53).  The Court has considered the pleadings filed in support of and in opposition to

16  the motions and the remainder of the file and hereby denies the motions for the reasons

17  stated herein.

18                          **I. PROCEDURAL HISTORY**

19        On July 9, 2014, Plaintiff Cato Sales and Trading ("Cato") filed a complaint

20  against Cosmo alleging breach of contract, breach of the covenant of good faith and fair

21  dealing, and a violation of the Washington sales representative contract agreement

22  statute, RCW 49.48.160.  Dkt. 1.

1    On July 16, 2015, Cosmo filed a motion for partial summary judgment.  Dkt. 41.

2    On August 3, 2015, Cato responded.  Dkt. 43.  On August 7, 2015, Cosmo replied.  Dkt.

3    50.

4        On August 13, 2015, Cosmo filed a motion for summary judgment.  Dkt. 53.  On

5    August 31, 2015, Cato responded.  Dkt. 55.  On September 4, 2015, Cosmo replied.  Dkt.

6    58.  On September 9, 2015, Cato filed a surreply[1].  Dkt. 60.

7                            **II. FACTUAL BACKGROUND**

8        Cato's parent company Charlestown Investments ("Charlestown") identified a

9    business opportunity to acquire and restart the former Weyerhaeuser dissolving wood

10   pulp mill in Cosmopolis, Washington.  Charlestown met with the Gores Group, a Los

11   Angeles private equity group ("Gores"), and presented its plan to acquire the mill.  In

12   September of 2010 Gores formed Cosmo to purchase and run the mill, and Charlestown

13   formed Cato to serve as the mill's global sales agent.

14       On September 16, 2010, Cato and Cosmo entered into an agreement wherein

15   Cosmo was the "Company" and Cato was the "Agent."  Dkt. 18, Exh. A ("Agency

16   Agreement").  The relevant provisions of the Agency Agreement are set forth in the

17   discussion section, but the parties essentially agreed that Cato would be the exclusive

18   agent to pursue and obtain sales of Cosmo's products.

19       It is undisputed that one of the most valuable products Cosmo endeavored to

20   produce was high-value acetate, which is the material used to make cigarette filters.  *Id*.,

21

22       [1] The Court strikes the surreply because it contains substantive arguments in violation of the Local Rules.

ORDER - 2

Exh. E.  In order to sell its acetate for cigarette filters, however, the mill must be qualified by the cigarette manufacturer.  *Id*.  The mill obtains this qualification by making samples of acetate pulp that are sent to specialty chemical companies who supply product to the cigarette manufacturers.  *Id*.  The specialty chemical companies turn the acetate pulp into acetate filter tow for the cigarette manufacturer to make into cigarette filters.  *Id*.  The cigarette manufacturer then conducts a "taste test" of the filters made from the mill's sample.

In July 2011, Cosmo generated acetate samples for submission to two specialty chemical companies, Daicel Chemical Industries Ltd. ("Daicel") and Eastman Chemical Company ("Eastman), who supply filter tow to cigarette manufacturers Philip Morris International Inc. ("Philip Morris"), Japan Tobacco International ("JT"), and British American Tobacco Company ("BAT").  Although the Cosmo tow passed JT and BAT's taste tests, the tow ultimately failed Phillip Morris's taste test.  On November 19, 2012, Daicel advised Cato that the taste failure would preclude sales for 2013.  *Id*., Exh. G.

In a letter dated May 21, 2013, Cosmo sent Cato a notice that purported to terminate Cato's position as the Cosmopolis mill's global sales agent effective June 3, 2013.  *Id*., Exh. I.  In letters dated the following day, Cosmo sent Cato's customers notice of the termination and its replacement with Central National-Gottesman, Inc. ("CNG").  *See, e.g.*, *id*., Ex. J.  On June 3, Cosmo issued a press release announcing that Cosmo's new sales agent would be CNG.

1    In early 2014, Cosmo signed multi-year deals with Innovia and Rettenmaier.  Cato

2    asserts that it is entitled to commissions on those contracts because, even if the deals were

3    closed after Cosmo terminated Cato, Cato was the procuring cause of the deals.

### III. DISCUSSION

**A.     Summary Judgment Standard**

6           Summary judgment is proper only if the pleadings, the discovery and disclosure

7    materials on file, and any affidavits show that there is no genuine issue as to any material

8    fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

9    The moving party is entitled to judgment as a matter of law when the nonmoving party

10   fails to make a sufficient showing on an essential element of a claim in the case on which

11   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

12   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

13   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

14   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

15   present specific, significant probative evidence, not simply "some metaphysical doubt").

16   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

17   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

18   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

19   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

20   626, 630 (9th Cir. 1987).

21          The determination of the existence of a material fact is often a close question. The

22   Court must consider the substantive evidentiary burden that the nonmoving party must

1  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

2  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

3  issues of controversy in favor of the nonmoving party only when the facts specifically

4  attested by that party contradict facts specifically attested by the moving party.  The

5  nonmoving party may not merely state that it will discredit the moving party's evidence

6  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

7  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

8  nonspecific statements in affidavits are not sufficient, and missing facts will not be

9  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

10  **B.    At-Will Termination**

11        In this case, the parties dispute whether the at-will provision in their contract was

12  modified.  Section 10.2 of their agreement provides as follows: "Notwithstanding the

13  foregoing, either party may terminate this Agreement at any time after December 31,

14  2011, upon at least sixty (60) days' prior written notice to the other party."  Agency

15  Agreement, § 10.2.

16        First, the Court declines to accept Cosmo's arguments based on the law of oral

17  modifications of common law employment relationships.  Dkt. 50 at 3–4 (citing

18  *Winspear v. Boeing Co.*, 75 Wn. App. 870 (1994); *St. Yves v. Mid State Bank*, 111 Wn.

19  2d 374, 375 (1988), *overruled by Berg v. Hudesman*, 115 Wn. 2d 657 (1990).  It is true

20  that "employers and employees can contractually modify the at-will employment

21  relationship, eschewing the common law rule in favor of negotiated rights and liabilities."

22  *Ford v. Trendwest Resorts, Inc.*, 146 Wn. 2d 146, 154 (2002).  This dispute, however,

1   does not involve a common law employer-employee relationship.  Instead, this dispute

2   involves an explicit provision of a written contract and the alleged modification thereof.

3   Therefore, there is no reason to consider "exceptions" to the "employment at-will

4   doctrine."  *Id*.

5        Under Washington contract law, "a terminable-at-will contract may be unilaterally

6   modified."  *Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760,

7   768 (2006).  Such modifications require an offer, an acceptance, and consideration.  *Id*. at

8   769[2].  On these issues, the parties dispute whether there was mutual assent to any

9   modification as well as additional consideration.

10       Cato's first argument is that Cosmo unilaterally changed the Agency Agreement

11   and Cato "need not prove acceptance and consideration beyond demonstrating that Cato

12   continued in the relationship . . . ."  Dkt. 43 at 8 (citing *Cascade Auto Glass*, 135 Wn.

13   App. at 769).  While the Court does not agree that continued performance proves both

14   acceptance and consideration, it does show acceptance.  According to Cato, Cosmo

15   offered to alter the termination provision to retain Cato through the exit of the Gores

16   investment.  Although Cosmo contends that the "Court will look in vain for such

17   testimony" (Dkt. 50 at 7), Cosmo quoted such testimony in its brief.  *See id*. at 6 (Tim

18   said that "the terms are that through to the exit of Gores from this investment, Mike is

19   going to remain the CEO and Cato is going to remain the sales agent . . . .").  Taking the

20   inferences in the light most favorable to Cato, a reasonable juror could conclude that

21

22        [2] The Court recognizes the legal overlap with employment contracts such as published policies and procedures.  *Gaglidari v. Denny's Rest., Inc.*, 117 Wn.2d 426, 433–34 (1991).

1    Cosmo was unilaterally altering the terminable-at-will agreement.  Cato could have either

2    given sixty days notice of termination of the agreement or accept the terms by continued

3    performance.  Cato continued to perform under the agreement and, therefore, one could

4    conclude that Cato accepted the new terms of the agreement.

5            The next question is whether the modification fails for lack of consideration.

6    "Consideration exists in any bargained for legal detriment, no matter how seemingly

7    small."  *Storti v. Univ. of Washington*, 181 Wn. 2d 28, 37 (2014).  In this case, there is at

8    most questions of fact regarding Cato working to procure additional business

9    relationships, holding weekly meetings between Richard Bassett and Mike Entz, and

10   willingness not to undermine the management team at the mill.  At the very least, Cato

11   was now subject to termination whenever the Gores exited the investment without a 60-

12   day notice.  If the fact finder accepts the modification, then the fact finder must also

13   accept the actual possibility that the Gores could have exited the investment at any time,

14   which constitutes a bargained-for legal detriment to Cato.

15           Finally, the parties dispute whether there was a mutual agreement to alter the

16   terms of the contract.  "Generally, whether there has been mutual assent to the terms of a

17   contract is a question of fact."  *Plese-Graham, LLC v. Loshbaugh*, 164 Wn. App. 530,

18   541 (2011) (citing *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 162 (2002); *Sea–Van*

19   *Invs. Assocs. v. Hamilton*, 125 Wn.2d 120, 126 (1994)).  Cato has submitted facts that, if

20   accepted, could lead to the rational conclusion that the parties intended to mutually

21   modify their contract to resolve significant disputes in the relationship.  Cosmo argues

22   that there is no "genuine" dispute of fact, but the Court disagrees because there are two

1  sides to this story and the issues may not be resolved on summary judgment.  Therefore,

2  the Court denies Cosmo's motion for partial summary judgment on the issue of

3  modification of the agreement.

4  **C.      The Business Plan**

5          Cosmo moves for summary judgment on some of Cato's theories supporting its

6  breach of contract claim.  Dkt. 53 at 16.  It is entirely unclear what Cosmo intends to

7  accomplish with this motion.  In response, Cato argues that the Business Plan is relevant

8  to interpretation of the Agency Agreement.  As such, the document may be introduced at

9  trial to support at least Cato's understanding of some terms of the agreement.  However,

10  there is no ground to support summary judgment on Cato's "claims" created by Cosmo,

11  the opposing party.  Therefore, the Court denies Cosmo's motion with regard to the

12  Business Plan.

13  **D.      Substandard Acetate**

14          Although the Court has already ruled that questions of fact exist whether "the

15  Agency Agreement required Cosmo to provide adequate samples" (Dkt. 32 at 6), Cosmo

16  moves for summary judgment on this issue.  None of the evidence submitted in this round

17  of briefing solves the disputed interpretation of the provision of the Agency Agreement

18  that requires Cosmo to "provide [Cato] with all necessary Produce samples . . . to enable

19  [Cato] to sell the Product."  Agency Agreement, § 6.  Therefore, the Court denies

20  Cosmo's motion because genuine issues of material fact exist on this issue.

21

22

**E.      Commissions on Multi-Year Contracts**

In this case, the parties dispute whether Cato is entitled to commissions on orders negotiated during the period when Cosmo terminated Cato as its agent.  Cato claims that it is entitled to commissions from Cosmo's multi-year contracts with Innovia and Rettenmaier under both the terms of the Agency Agreement and the procuring cause dotrine.  Dkt. 55 at 21–24.  With regard to the contract, Cato's argument is fairly weak as there is no provision of the contract that entitles Cato to commissions on contracts entered into after the agreement ends.  Cato, however, has shown that questions of fact exist whether the contract was altered such that Cato remained the agent until the Gores exited the investment.  Under that circumstance, it would seem that Cato would be entitled to these commissions if the Gores had not exited when Cosmo obtained the contracts.  Therefore, the Court denies Cosmo's motion for summary judgment on Cato's claim under the contract.

With regard to the procuring cause doctrine, the rule "'states that when a party is employed to procure a purchaser . . . to whom a sale is eventually made, he is entitled to a commission . . . if he was the procuring cause of the sale.'"  *Miller v. Paul M. Wolff Co.*, 178 Wn. App. 957, 963 (2014) (quoting *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 754 (1998)).  However, "[i]f a written contract expressly provides 'how commissions will be awarded when an employee or agent is terminated,' the procuring cause rule is inapplicable."  *Miller*, 178 Wn. App. at 964 (quoting *Willis*, 109 Wn.2d at 755).  Courts should "decline to modify the express terms of a written contract agreed to by competent parties."  *Willis*, 109 Wn. 2d at 759.

1       In this case, the parties dispute whether the contract provides how commissions

2    will be awarded upon termination.  Cosmo presents the better argument.  Similar to the

3    contract at issue in *Willis*, the Agency Agreement provides that commissions are due on

4    orders placed during the term of the agreement and the agreement includes a terminable-

5    at-will provision.  Thus, as in *Willis*, the Court declines to modify the express terms of

6    the agreement.  While Cato argues that the "Term" of the agreement is yearly, regardless

7    of termination by either party, the contract expressly provides that the term is yearly, but

8    may be modified by the termination provision, and Cato's proposed interpretation is

9    without merit.  *See* Agency Agreement §§ 10.1, 10.2.  Therefore, regardless of whether

10   the termination clause was modified, the Court declines to afford Cato the equitable

11   remedies under the procuring cause doctrine.

12                                        **IV. ORDER**

13       Therefore, it is hereby **ORDERED** that Cosmo's motions for partial summary

14   judgment (Dkt. 41) and summary judgment (Dkt. 53) are **DENIED**.

15       Dated this 16th day of October, 2015.

16

17   _____

     BENJAMIN H. SETTLE

18   United States District Judge

19

20

21

22